OPINION OF THE COURT
Paul I. Marx, J.
*500 This Election Law proceeding was brought by order to show cause filed with the County Clerk on July 31, 2017 and signed by this court on August 2, 2017. Petitioner, Andrew DeStefano seeks an order: (1) “declaring valid, proper, sufficient and legally effective the Designating Petition heretofore filed with the Respondent Board of Elections, and all signatures contained therein, for each, any and all of the reasons set forth in [the] Petition and its supporting papers, designating Petitioner-Candidate as candidate for the public office of Putnam County Sheriff in the Primary Election to be held on the 12th day of September, 2017”; (2) “Directing, requiring and commanding Respondent Board of Elections to print and/or place the name of Petitioner-Candidate aforesaid as candidate for the public office of Putnam County Sheriff in the Primary Election to be held on the day [sic] 12th of September, 2017, on the official ballots to be used at the public office of Putnam County Sheriff in the Primary Election to be held on the day [sic] 12th of September, 2017”; (3) “Enjoining and restraining Respondent Board of Elections from printing, issuing, or distributing for use during the Primary Election to be held on the 12th day of September, 2017, any and all official ballots used in the said Primary Election upon which the name of Petitioner-Candidate does not appear as candidate for the public office of Putnam County Sheriff”; and (4) “Granting Petitioner-Candidate such other and further relief as this Court deems just and proper.”
For the reasons set forth below, the petition is decided as follows:
Facts
On July 13, 2017, DeStefano filed a designating petition[1] with the Putnam County Board of Elections by which he claimed entitlement to be placed on the ballot as a candidate for the office of Putnam County Sheriff in the primary election set to occur on September 12, 2017. The designating petition contained 1,302 signatures which exceeded the minimum requirement of 1,000 signatures needed to appear as a candidate in the primary. A corrected designating petition, amended at the Board’s request only to include page numbers, was filed on July 18, 2017. (Exhibit A to order to show cause [OTSC].)
*501 On July 17, 2017, James Borkowski, a registered voter and chair of the Putnam County Democratic Party, filed general objections to the designating petition. (Exhibit B to OTSC.) On that same day, Patrick Perry, a registered voter, filed general objections to the designating petition. (Exhibit C to OTSC.)
On July 24, 2017, Borkowski filed specific objections to the designating petition, which he titled “Objections Affecting the Entire Petition.” In his specific objections, Borkowski contested 918 of the signatures submitted by DeStefano and alleged that the designating petition was therefore ineffective because it lacked the requisite number of signatures for DeStefano to appear on the ballot.
Borkowski submitted the following detailed objections. First, Borkowski contended that “on all pages of the DeStefano Petition, the subscribing witness failed to complete the Witness Identification Information.” Next, he asserted that
“with regard to all petition pages purportedly witnessed by Thomas Gervasi, Maureen Gervasi, Anne Marie Liebler, and Carlos Perez, each of these witnesses also provided incorrect residence addresses. Since each of these witnesses failed to complete the Witness Identification Information section, their petition pages fail to provide a legally sufficient address of the subscribing witness.”
He concluded, therefore, that “the petition pages of Thomas Gervasi, Maureen Gervasi, Anne Marie Liebler, and Carlos Perez are all invalid.” (Exhibit D to OTSC.)
In addition, Borkowski raised objections to individual signatures. These objections can be categorized as follows: (1) the signer was not a registered Republican, (2) the signer’s address was incomplete, incorrect, or was not an actual address, (3) the purported signature of the voter was not, in fact, the voter’s signature, (4) the date signed was incorrect, (5) the signer was not registered to vote, and (6) the signer previously signed a designating petition for the same or a different candidate. (Id.)
On July 24, 2017, Perry submitted specific objections to the designating petition. Generally speaking, Perry’s objections mirrored those of Borkowski. He asserted that the failure of the subscribing witness to insert the town or county (or in some cases both) where required on the petition invalidated the designating petition. He also alleged that the designating petition was invalid because it lacked page numbers. Further, *502 he contended that (1) some signers were not registered to vote or were not registered Republicans, (2) some signers did not reside in Putnam County, (3) some of the signatures on the designating petition did not match those on the Board’s records, and (4) some signatures were witnessed on a date that preceded the date on which the signature was stated to have been obtained. (Exhibit E to OTSC.)
The Board’s Actions
On July 26, 2017, the Board reviewed the objections filed by Borkowski and invalidated 729 signatures from the designating petition, thereby determining that DeStefano lacked the requisite number of signatures to appear on the ballot. (Exhibit F to OTSC.)
On July 27, 2017, the Board reviewed the objections filed bv Perry and invalidated 282 signatures. Thus, but for the Borkowski objections, DeStefano would have had a sufficient number of signatures to appear on the ballot. (Exhibit G to OTSC.)
The Instant Proceeding
On July 31, 2017, the instant proceeding was commenced by the filing of a proposed order to show cause together with a verified petition (the petition) and supporting documents with the Putnam County Clerk’s Office. The order to show cause was signed by the undersigned on August 2, 2017, with August 7, 2017 set as the initial appearance date. The court directed service be made by overnight delivery on all respondents by August 3, 2017.[2]
This matter was originally randomly assigned, in accordance with the court’s usual procedures, to the Honorable James F. Reitz, A.J.S.C., when it was filed on July 31, 2017. By order dated August 1, 2017, Judge Reitz recused himself from the matter. Thereafter, the matter was randomly assigned to the Honorable Robert M. DiBella, J.S.C., on August 1, 2017. Because of Justice DiBella’s actual involvement in a jury trial, the papers were transferred to this court on August 2, 2017 *503 and the matter was officially reassigned to this court by the Honorable Alan D. Scheinkman, Administrative Judge, Ninth Judicial District, on August 3, 2017.
On August 7, 2017, counsel for all parties appeared before the undersigned as directed in the order to show cause. Petitioner appeared by John M. Zarcone, Jr., Esq. Respondent Borkowski, an attorney, appeared for himself. Respondent Perry appeared self represented. Respondent Sheriff Donald Smith appeared by Michael B. Karlsson II, Esq. Respondents Board and Election Commissioners Scannapieco and Croft appeared by Shannon S. Brady, Esq.
Following a conference with counsel, several stipulations were entered on the record which limited the issues to be decided and streamlined the matter.
The Stipulations
First, petitioner agreed to discontinue the matter against Perry and Sheriff Smith and did so on the record in open court. Thus, the issues concerning whether the Board acted properly in disallowing 282 signatures based on the Perry objections are no longer before the court.
Next, all respondents stipulated that they had received the order to show cause and supporting papers as directed by the court.[3]
Third, as noted above, petitioner’s counsel withdrew the “Appendix” attached to the petition as duplicative of exhibit D to the petition and the parties agreed to insert the original records maintained by the Board in its place. In addition, petitioner’s counsel clarified that, although the papers submitted in support of the order to show cause refer to a memorandum of law, none was actually submitted.
Fourth, the parties stipulated that the matter would be submitted to the court on papers and the court could decide all issues of fact and law, including issues of credibility, if necessary, without the need for live testimony to be adduced.
Fifth, on consent of all parties, the court set a briefing schedule which required answers to the petition to be served and *504 filed, no later than August 9, 2017 at 10:00 a.m. and any reply to be served and filed no later than 1:00 p.m. on August 10, 2017. All parties agreed to accept service of opposing counsels’ papers via email.
Finally, the parties agreed that the language petitioner used to describe the documents which were sought to be produced by the Board would be modified to eliminate the words “the permanent personal voter registration poll records of voters, computer generated registration lists for the last four (4) years and the official maps for the County of Putnam”[4] and replaced with “a list of all registered Republicans in Putnam County as of July 13, 2017.”
Petitioner’s Contentions
Petitioner contends, generally, that the disqualification of his designating petition was improper because (a) Borkowski lacked standing to object to the petition, (b) the alleged errors in the witness statement (the omission of the town and county) were “non substantive technical errors” and/or defects which did not invalidate those signatures or require voiding those pages of the designating petition where the alleged errors appeared, and (c) the alleged errors in individual signatures were similarly “non substantive technical errors.”
In addition, petitioner contends that the actions of the Board were
“arbitrary, capricious and outside the limited powers of the Respondent Board of Elections, are not limited to being ministerial in nature but judicial, rendered by making legal conclusions, rendered by making findings of fact, were not unanimous as required by the Election Law, rendered pursuant to conflicts of interest the various commissioners may, or actually have and in violation of the provisions of Election Law Article 6.” (Petition ¶ 8.)
Consequently, petitioner asserts that all 729 of the signatures which were stricken should be validated.
The Board’s Response
In its answer, the Board denied the allegations of the petition and asserted three affirmative defenses and objections in point of law, simultaneously confirming several facts alleged in the petition. First, the Board confirmed that the designating petition was filed on July 13, 2017, the last day permitted *505 under Election Law § 6-158 (l),[5] and that an amended designating petition was filed at its request on July 18, 2017. Next, the Board confirmed that Borkowski filed general objections on July 17, 2017, and specific objections on July 24, 2017. Finally, the Board confirmed that an administrative review of Borkow-ski’s objections was conducted on July 26, 2017, wherein it disqualified 729 of the 1,302 signatures submitted and thus declared the designating petition to be “null and void.”
A. The Board contends that the court lacks jurisdiction because the petition was not timely filed and served.
The Board’s first affirmative defense alleges that the court lacks jurisdiction because the petition was not timely filed and served.
Under Election Law § 16-102 (2), an action commenced to challenge an Election Board’s invalidation of a designating petition must be “instituted within fourteen days [of] the last day to file [a] petition, or within three business days after the officer or board with whom or which such [designating] petition was filed, makes a determination of invalidity with respect to such petition, whichever is later” (emphasis added).
The Board states that 14 days after the July 13, 2017 deadline to file a designating petition is July 27, 2017 and that three business days after it rendered its determination on the Borkowski objections on July 26, 2017 was July 31, 2017. Thus, the Board contends, the last date to file the petition in this court was July 31, 2017. The Board asserts that neither the petition nor the order to show cause contain a stamp from the County Clerk indicating when the papers were filed. Consequently, the Board asserts that the court cannot determine whether the petition was timely filed. Assuming arguendo that the petition was timely filed, the Board next asserts that the court lacks jurisdiction because the petition was not timely served.
The Board argues that “ [i] t is well settled that to properly institute a proceeding to contest the invalidation of a Designating Petition under Election Law § 16-102, Petitioner ‘must commence the proceeding and complete service on all necessary *506 parties’ . . . within the required period.” (Verified answer by County respondents ¶ 10, quoting Matter of McDonough v Scannapieco, 65 AD3d 647, 648 [2d Dept 2009] [emphasis added], also citing Matter of Kurth v Orange County Bd. of Elections, 65 AD3d 642 [2d Dept 2009], and Matter of Wilson v Garfinkle, 5 AD3d 409 [2d Dept 2004].)
The Board notes that, according to the affidavits of service filed by petitioner, the order to show cause and petition were not served on Borkowski until August 2, 2017, and were not served on it until August 3, 2017. (Verified answer by County respondents, exhibit 2.) The Board anticipates that petitioner will argue that the petition is timely because the order to show cause and accompanying papers were served in accordance with the dates set by the court. The Board argues that case law holds that “language with regard to service contained in the order to show cause that commenced the proceeding ‘could not and did not extend the period of limitations within which to institute the proceeding within the meaning of the Election Law.’ ” (Id. ¶ 12, quoting McDonough at 648-649, also citing Matter of Marino v Orange County Bd. of Elections, 307 AD2d 1011, 1012 [2d Dept 2003].)
For these reasons, the Board alleges that the instant proceeding must be dismissed as untimely.
B. The Board’s Second Affirmative Defense
The Board’s second affirmative defense alleges that the Board “acted in accordance with all applicable Federal and New York State laws, rules, regulations and/or statutes including, but not limited to, the New York State Election Law.” (Verified answer by County respondents f 15.)
The Board does not expand upon this defense.
C. The Board’s Third Affirmative Defense
The Board’s third affirmative defense alleges that the Board’s decisions were not “arbitrary, capricious nor [sic] an abuse of discretion.” (Id. f 17.)
The Board does not expand upon this defense.
Borkowski’s Response
In his answer, Borkowski either denies, or denies knowledge as to, all substantive allegations of the petition, but admits that he is a “registered member of the Democratic Party and served as chairman of the Putnam County Democratic Com *507 mittee,”[6] and that he filed both general and specific objections to the designating petition.
In his affidavit, Borkowski contends that (a) he has standing to object to the designating petition under Election Law § 6-154, (b) the Board properly invalidated the signatures of those individuals who were not enrolled Republicans, (c) the Board properly invalidated the pages of the designating petition which were witnessed by Thomas Gervasi, Maureen Gervasi and Joseph Gervasi because they failed to include the town/ city or county in which they resided “as required by law,” and (d) the Board properly invalidated the pages of the designating petition which were witnessed by Anne Marie Liebler and Carlos Perez because they incorrectly identified the town in which they reside.
Borkowski claims standing to object under Matter of Powers v New York State Bd. of Elections (122 AD2d 970 [3d Dept 1986]), asserting that “while a County Chair may lack standing to initiate an Elections [sic] Law Section 16-102 proceeding, the Chair does have standing to file objections.” (Borkowski aff f 10.)
In addition, Borkowski asserts that “[s]triet compliance with the Town and City requirements set forth in EL 6-140 serves the legitimate purpose of facilitating the discovery of fraud and allows the rapid and efficient verification of signatures within the restrictive time periods imposed by the Election Law.” (Id. [citations omitted], citing Matter of Zobel v New York State Bd. of Elections, 254 AD2d 520 [3d Dept 1998].) He contends that the “discovery of fraud is especially important in this instance, since Petitioner, while running for Putnam County Sheriff in 2009, admitted to personally forging at least 60 petition signatures.” (Borkowski aff ¶ 21.)
Petitioner’s Reply
In reply to the Board’s opposition, petitioner submits an affirmation of his counsel, his own affidavit and a memorandum of law. Petitioner asserts that the matter was timely commenced because the petition and proposed order to show cause were filed on July 31, 2017 and served in accordance with the *508 court’s directives, by overnight mail prior to August 3, 2017. Petitioner contends that any claim of untimeliness was waived by the Board when it agreed to accept service by overnight delivery and did not raise an objection to timeliness on the return date when the court confirmed that all parties had received the petition and supporting papers on the record. Petitioner contends, further, that the petition was timely filed nevertheless, because it was filed with the Putnam County Clerk on July 31, 2017, and any delay in service was out of his control as the signing of the order to show cause was delayed due to internal court assignment issues.
Petitioner next argues, for the first time, that the petition was timely because under Election Law § 6-154 (3), he was entitled to written notice of the Board’s determination “as a condition precedent.” DeStefano asserts, in his affidavit, that he requested a copy of the Board’s determination via email and “never received a meaningful response” and that, as of the date of his supporting affidavit, he had received only written confirmation of the Board’s determination of the Perry objections. Petitioner details his alleged efforts to secure a copy of the Board’s determination, without success.
Finally, as to the Board, petitioner asserts that the second and third affirmative defenses are “insufficiently pleaded and are therefore defective as conclusory and without basis and support in fact, law or merit and further, they are hearsay.”[7] (Reply affirmation of John M. Zarcone, Jr., Esq., dated Aug. 10, 2017, ¶ 19.)
As to Borkowski’s claim of standing to object to the designating petition,[8] petitioner rejects Borkowski’s reliance on Matter of Powers v New York State Bd. of Elections (122 AD2d 970 [3d Dept 1986]), stating that Powers is inapplicable. He asserts that Powers concerned a nonparty objection to an opportunity *509 to ballot petition, not a designating petition in a primary election. In addition, petitioner contends that the Powers Court erred in its reliance on Matter of Stempel v Albany County Bd. of Elections (60 NY2d 801, 803 [1983], affg 97 AD2d 647 [3d Dept 1983]) as precedent. Petitioner suggests that the Powers Court “failed to distinguish Liepshutz[9] [which] only allowed the non party objector to object because he was also the opposing candidate whose petition was being objected to which clearly is not the case.” (Borkowski’s attorney affirmation in reply f 25.) Petitioner asserts that Borkowski’s failure to object, as party chair, rather than in his individual capacity, makes him ineligible to object. Thus, he reiterates that Borkowski lacked capacity to object to the designating petition.
Petitioner argues, as well, that Borkowski’s agreement to accept service by overnight mail when asked by the court in a telephone conference held on August 2, 2017, and his failure to state the objection to the timeliness of the petition on the record on the return date served as a waiver of any timeliness defense.
Petitioner also rejects Borkowski’s assertions that the absence of a town and/or county in the witness attestation is fatal, citing various cases. Similarly, petitioner states that the declaration of witnesses that they reside in Holmes, NY, their legal mailing address, rather than the actual town in which they live, is not a fatal defect to his petition.
Finally, petitioner objects to Borkowski’s inclusion of copies of his statements to New York State Police, wherein he admitted to forging petition signatures, as improper because his conviction for filing a false instrument under Penal Law § 175.30 and misconduct in relation to petitions under Election Law § 17-122 was reversed, vacated and sealed. Thus, he asserts, Borkowski improperly submitted materials which are subject to a sealing order, solely to “defame my hard won reputation.” (DeStefano aff dated Aug. 10, 2017, ¶ 30.)
Petitioner concludes that, had the order to show cause been signed by the court on July 31, 2017, he and his “team” were standing by to serve it as directed, but that they left the county courthouse when it was not signed before the court closed.[10]
*510 The Board’s Surreply[11]
In its surreply, the Board argues that petitioner’s failure to assert his entitlement to be served with a copy of the Board’s decision as a condition precedent is improperly raised in reply. Hence, the Board asserts that this claim should not be considered by the court. If the court entertains the argument, the Board urges that petitioner, in fact, was provided notice of its determination under Election Law § 6-154 (3). In support of that assertion, the Board annexes a copy of a letter dated July 25, 2017 and mailed on July 26, 2017, which it claims was sent to Borkowski and copied to petitioner, advising that after review, the designating petition was declared invalid. (Exhibit 3 to Board’s surreply.)
In addition, the Board notes that petitioner obtained a copy of the Board’s minutes, which negated the petition on July 28, 2017, pursuant to a Freedom of Information Law (FOIL) request. The Board also asserts that petitioner’s presence at the Board’s review, when it made its determination, provided actual notice to him of its determination.
Finally, the Board argues that Election Law § 16-102 (2) specifically measures the three day period for filing of a judicial proceeding from the date of the Board’s determination, not the date the adversely affected party receives notice of the determination. (Surreply affirmation of Shannon S. Brady, Esq., ¶ 12, citing McDonough and Kurth.) Thus, the Board urges the court to disregard the cases decided in the Appellate Division, Third Department which hold to the contrary and on which petitioner relies.
Borkowski’s Surreply[12]
Borkowski’s surreply is limited to addressing how he came into possession of documents from petitioner’s sealed criminal file. Borkowski attests that the “petitioner’s signed confession was obtained by a simple FOIL request to the Town of Southeast Justice Court in 2010.” (Borkowski affirmation dated *511 Aug. 11, 2017, ¶ 3.) He annexes to the submission a copy of the entire FOIL response obtained by him.
Scope of This Decision and Order
In accordance with the directives of the Appellate Division, which require Supreme Court to decide all issues raised by an Election Law challenge even if a technical issue would dispose of the matter, the court will address all issues raised.
Prior to evaluating the merits of the parties’ challenges to the contents of the petition, the court will determine the two threshold issues raised by the parties. First, the Board contends that the petition is untimely. Second, petitioner alleges that Borkowski lacks authority to file objections because of his position as chair of the Putnam County Democratic Party, pursuant to Election Law § 16-102. Since determination of either one of these issues may result in the disposition of the matter, they are being addressed first.
Threshold Issues
The Board’s Challenge to the Timeliness of the Petition
As set forth above, the Board asserts that the petition is untimely under Election Law § 16-102. The Board contends that the petition was filed and served more than three business days after the Board rendered its determination, in contravention to the mandates of the Election Law.
Petitioner’s argument that the Board’s timeliness defense was waived is rejected. In making the argument, petitioner’s counsel ignores the fact that the Board’s attorney informed all parties during an off-the-record discussion held by the court[13] that the Board considered the proceeding to be untimely and intended to raise the issue in its papers. Indeed, counsel for the Board provided the court and all counsel with a copy of Matter of McDonough v Scannapieco (65 AD3d 647 [2d Dept 2009]), which addresses the timeliness issues, during the conference. Clearly, there was no waiver of the defense.
The Petition was Timely Filed
The court first addresses the issue of whether the petition was timely filed under Election Law § 16-102 (2), which provides:
*512 “A proceeding with respect to a petition shall be instituted within fourteen days after the last day to file the petition, or within three business days after the officer or board with whom or which such petition was filed, makes a determination of invalidity with respect to such petition, whichever is later; except that a proceeding with respect to a petition for a village election or an independent nomination for a special election shall be instituted within seven days after the last day to file the petition for such village election or independent nomination or within three business days after the officer or board with whom or which such petition was filed, makes a determination of invalidity with respect to such petition, whichever is later. A proceeding with respect to a primary, convention, meeting of a party committee, or caucus shall be instituted within ten days after the holding of such primary or convention or the filing of the certificate of nominations made at such caucus or meeting of a party committee.”
Petitioner states that he appeared at the County Clerk’s Office to file the then proposed order to show cause along with the petition and supporting papers on July 31, 2017. This was within three days of the Board’s determination. He states that he waited for the proposed order to show cause to be signed so that service could be made.
Although neither the order to show cause nor the petition and papers filed in support of it were date and time stamped when received by the County Clerk, the court takes judicial notice that the request for judicial intervention (RJI), which accompanied those documents was stamped as received by the County Clerk on July 31, 2017 at 4:32 p.m. (See request for judicial intervention.) In addition, the court has ascertained that the block on the RJI denoted as the “IAS Entry Date” was filled in by the Deputy Chief Clerk of the Putnam County Supreme and County Courts as “7/31/17.” The Deputy Chief Clerk also advised the court that pursuant to the random assignment system, she noted on the RJI that the matter was assigned to Judge Reitz[14] on that date.
*513 Based on the foregoing, the court concludes that the matter was timely filed.
The Petition was Timely Served
In addition to asserting that the petition was not timely filed, the Board alleges that the petition was not timely served and, therefore, the proceeding was not timely instituted. The Board properly states that a court cannot extend a statute of limitations by directing for service to take place beyond the expiration of the limitations period. The Board asserts that in addition to timely filing of the petition, the petitioner was required to serve the petition within the statutory three day period set by Election Law § 16-102 in order for the petition to be deemed timely. In support of this assertion, the Board relies on precedent from the Appellate Division, Second Department, including McDonough (65 AD3d 647), Kurth (65 AD3d 642), and Wilson (5 AD3d 409).
Petitioner argues that the petition was served in accordance with the directives of the court, as specified in the order to show cause. Petitioner further argues that he could have effected service within the three day time period had the court acted on his proposed order to show cause on July 31, 2017, when it was filed. While the court is skeptical whether the order to show cause would have been served on July 31, 2017, even if it had been signed by the then assigned judge, this is of no moment, because service of the petition within the three day period set by Election Law § 16-102 (2) was not required.
In stating that service of the petition within the statutory three days set by the Election Law for initiation of the proceeding was not required, this court diverges from years of precedent. In this regard, the court respectfully disagrees with the cases relied on by the Board and holds that service is not required within the three day time period that the Election Law sets for “instituting” a judicial proceeding. Simply put, there is no provision in the Election Law that requires service to be effected within three business days. The statute simply requires that the proceeding be “institutedwithin the time period set by statute. The word “instituted” is synonymous with the word “commenced.” Here, although petitioner waited until nearly the very last moment to file his petition, petitioner clearly instituted the proceeding within the stated time period. Just as the courts cannot extend a statute of limitations, the courts also cannot impose requirements on litigants’ rights to commence litigation which are not found in the law.
*514 This court believes that the Appellate Division has, for many years, incorrectly imported language from cases decided long before New York became a commencement by filing state in holding that an Election Law § 16-102 proceeding must be instituted by both filing and service within the statutory three day period. In doing so, the courts have inserted a commencement requirement not otherwise required by statute. This is, in this court’s view, incorrect since it is predicated on language from cases decided during a time when New York was a commencement by service state.
To be sure, the courts in McDonough, Kurth, and Davis all relied on, and cited to, Matter of King v Cohen (293 NY 435, 439 [1944]) as authority for their statements that “[a] petitioner raising a challenge under Election Law § 16-102 must commence the proceeding and complete service on all the necessary parties within [that] period.” (McDonough at 648.) King was decided in 1944, well before New York enacted the commencement by filing statute under CPLR 304 (a). Indeed, the Court in King, acting within the purview of the then existing Election Law § 330[15] et seq., stated:
“The parties against whom a proceeding of this kind is brought are entitled to such notice thereof ‘as the court, justice or judge shall direct’. (Election Law, § 335.) As heretofore construed by us, this requirement calls for delivery of the instrument of notice not later than on the last day on which the proceeding may be commenced.” (King at 439.)
King was decided under a set of laws that no longer exist and under procedural requirements that have been substantially modified. To repeat, when King was decided, New York was a commencement by service state, not a commencement by filing state as it is now and has been since 1992. Consequently, the precedential value of the King decision on the issue of how a special proceeding under Election Law § 16-102 (2) is “instituted” is nil. Nevertheless, the Supreme Courts and Ap *515 pellate Divisions seem to have followed the holding in King for years without regard to the change in law regarding how an action is commenced. This is improper and incorrect. Courts cannot rely on principles of law espoused in older cases where those principles emanate from statutes which are no longer in effect.
Where, as here, the legislature has specifically provided that a proceeding be instituted by filing of a petition in order to be timely, the courts cannot add another requirement for service to be completed within that same time period when service is no longer a required component for commencement of a proceeding. Yet, that is precisely what the Appellate Divisions have been doing for many, many years.
This case provides an excellent example as to why service within the statutory three days cannot be a requirement under the current law governing the time to institute or commence a proceeding. Here, petitioner filed his petition and order to show cause on the last day permitted by law, as enacted by the legislature. Thus, he complied with the statutory requirement to “institute” the proceeding by filing as required by Election Law § 16-102. It is inconceivable that petitioner should be deprived of the opportunity to have the court decide his claims because the Appellate Divisions have, by judicial fiat, added an extra requirement that has been absent from the statutory mandates since 1992. The supposed requirement that the petition be served in order for a proceeding to be commenced does not appear in the statute. Consequently, putative candidates, like petitioner herein, seeking review of determinations by Boards of Election and rightfully believing that commencement is by filing, would have no notice of the requirement that service must also be completed within the “instituted” period.
Moreover, having elected to proceed by order to show cause, as is permitted, the date by which petitioner had to serve the petition and order to show cause was beyond petitioner’s control. As noted above, this matter wended its way through three judges over a three day period before the order to show cause was signed. The service dates were set by the court and petitioner complied therewith. Clearly, petitioner had no control over the delay in the signing of the order to show cause and it is illogical to permit the proceeding to be submitted by order to show cause and to require that it be served within the same three day time period allotted for instituting the proceeding. Clearly, if the legislature wanted to require filing and ser *516 vice to be made within the three day time period set forth in Election Law § 16-102 (2), it could have so provided at any time after CPLR 304 was amended.[16] It has not. Since it has not, the court cannot add such a requirement. Rather, the provisions of the CPLR apply.
CPLR 304 provides:
"(a) An action is commenced by filing a summons and complaint or summons with notice in accordance with rule twenty-one hundred two of this chapter. A special proceeding is commenced by filing a petition in accordance with rule twenty-one hundred two of this chapter.[17] . . .
“(c) For purposes of this section, and for purposes of section two hundred three of this chapter and section three hundred six-a of this article, filing shall mean the delivery of the summons with notice, summons and complaint or petition to the clerk of the court in the county in which the action or special proceeding is brought or any other person designated by the clerk of the court for that purpose. At the time of filing, the filed papers shall be date stamped by the clerk of the court who shall file them and maintain a record of the date of the filing and who shall return forthwith a date stamped copy, together with an index number, to the filing party, except where filing is by electronic means. Such filing shall not be accepted unless any fee required as specified in section eight thousand eighteen of this chapter has been paid. Where filing is by electronic means, any fee required shall be paid in the time and manner authorized by the chief administrator of the court by rule.” (Emphasis added.)
Nothing in the Election Law or the CPLR requires that service also be completed to commence a proceeding of this type. This is a requirement created by the courts due to the perpetuation of a rule of law made in a different time and under different circumstances. The requirement, however, is inconsistent with the legislative language and intent. As such, this court *517 declines to follow that precedent. That the legislature failed to provide any provisions for limitations of time to serve a petition in proceedings of this nature, means that service of a petition under Election Law § 16-102 (2) must follow the provisions of CPLR 403 (b)[18] or CPLR 403 (d), which are applicable to all special proceedings or as directed by the court in an order to show cause.
CPLR 403 (d) allows a petitioner to commence a proceeding by order to show cause in lieu of a notice of petition.[19] In such case, service is as directed by the court. Thus, in the absence of any other controlling provision of law, the court may, after timely filing of a petition, and mindful of the deadline for rendering its decision, set the dates by which the order to show cause must be served. Doing so does not, contrary to the cases relied on by the Board, serve to extend the time to commence the proceeding, which was commenced herein upon petitioner’s filing the order to show cause and petition with the County Clerk.[20]
Put simply, the proceeding is commenced by filing and jurisdiction over the parties is obtained by service. It is possible for a proceeding to be timely commenced by filing without the court ever obtaining jurisdiction over the parties if service is not properly effected. This proceeding was timely instituted on July 31, 2017, within the three day limitations period provided *518 under the Election Law, when petitioner filed his papers with the County Clerk.
For the reasons set forth above, the court determines that the proceeding was timely commenced.[21]
Petitioner’s Challenge to Borkowski’s Standing
Petitioner asserts that because Borkowski is the chair of the Putnam County Democratic Party, he lacked standing to file objections to the designating petition, pursuant to Election Law § 16-102. Borkowski responds that he has standing under Election Law § 6-154 to object to the designating petition and that standing under Election Law § 16-102 is not at issue here, because he has not initiated the instant proceeding, DeStefano has.
Election Law § 16-102 provides, in pertinent part, as follows:
“1. The nomination or designation of any candidate for any public office or party position or any independent nomination, or the holding of an uncontested primary election, by reason of a petition for an opportunity to ballot having been filed, or the election of any person to any party position may be contested in a proceeding instituted in the supreme court by any aggrieved candidate, or by the chairman of any party committee or by a person who shall have filed objections, as provided in this chapter, except that the chairman of a party committee may not bring a proceeding with respect to a designation or the holding of an otherwise uncontested primary.”
Section 16-102 (1) allows a judicial proceeding challenging a designating petition to be filed by (1) “any aggrieved candidate,” or (2) “the chairman of any party committee” (emphasis added), or (3) “a person who shall have filed objections, as provided in this chapter.” There is an exception explicitly stated regarding the chairman of a party committee: “except that the chairman of a party committee may not bring a proceeding with respect *519 to a designation or the holding of an otherwise uncontested primary.” (Id.)
Petitioner incorrectly conflates Election Law § 16-102, which specifies when a party chairman may bring judicial proceedings to challenge or uphold a designating petition, with section 6-154, which sets forth who may file objections to a designating petition. Borkowski’s standing to bring a judicial proceeding under Election Law § 6-102 is not at issue because the proposed candidate, DeStefano, has brought the proceeding, not Borkowski. Therefore, while Borkowski’s position as a party chair is relevant under that section to determining his ability to bring a legal challenge in court, it does not necessarily preclude him from filing objections to a designating petition. The issue here is who may file objections or specifications of objections to a designating petition under section 6-154, the section of the Election Law cited by Borkowski.
Election Law § 6-154 determines who may object to a nominating or designating petition. Hence, Borkowski’s capacity to object to the designating petition must be examined within the ambit of that provision.
Election Law § 6-154 provides, in pertinent part, as follows:
“1. Any petition filed with the officer or board charged with the duty of receiving it shall be presumptively valid if it is in proper form and appears to bear the requisite number of signatures, authenticated in a manner prescribed by this chapter.
“2. Written objections to any certificate of designation or nomination or to a nominating or designating petition or a petition for opportunity to ballot for public office or to a certificate of acceptance, a certificate of authorization, a certificate of declination or a certificate of substitution relating thereto may be filed by any voter registered to vote for such public office and to a designating petition or a petition for opportunity to ballot for party position or a certificate of substitution, a certificate of acceptance or a certificate of declination relating thereto by any voter enrolled to vote for such party position. Such objections shall be filed with the officer or board with whom the original petition or certificate is filed within three days after the filing of the petition or certificate to which objection is made, or within three days after the last day to file such a *520 certificate, if no such certificate is filed except that if any person nominated by an independent nominating petition, is nominated as a party candidate for the same office by a party certificate filed, or a party nomination made after the filing of such petition, the written objection to such petition may be filed within three days after the filing of such party certificate or the making of such party nomination. When such an objection is filed, specifications of the grounds of the objections shall be filed within six days thereafter with the same officer or board and if specifications are not timely filed, the objection shall be null and void. Each such officer or board is hereby empowered to make rules in reference to the filing and disposition of such petition, certificate, objections and specifications.” (Emphasis added.)
Section 6-154 is dispositive of the issue of who has standing to object to a designating petition. That section clearly states that objections to a designating petition “may be filed by any voter registered to vote for such public office” for which the petition was submitted (§ 6-154 [2] [emphasis added]). Borkowski clearly qualifies as “any voter” who is “registered to vote” for the public office of Putnam County Sheriff. The statute does not limit, qualify or exclude a party chairman from the term “any voter,” as compared to section 16-102 (1), which specifically excludes a party chairman from those who may bring a judicial proceeding challenging “a designation or the holding of an otherwise uncontested primary.” Nor does section 6-154 provide any limitation or specific reference to a primary election. Therefore, Borkowski, as a registered voter in Putnam County, who is qualified to cast a vote for a candidate for the public office of Putnam County Sheriff, has legal capacity to file objections to any designating petition submitted by a .candidate seeking that public office.
As a point of further clarification, the court refers to the language in section 6-154 (2) regarding designating petitions for party positions, which states that objections may be filed “to a designating petition or a petition for opportunity to ballot for party position or a certificate of substitution, a certificate of acceptance or a certificate of declination relating thereto by any voter enrolled to vote for such party position.” It is clear from that language that, at least with regard to petitions for party positions, “any voter” is qualified by the further require *521 ment that the voter be “enrolled to vote for such party position,” which would necessarily disqualify a voter registered with a different party from serving as an objector. No such qualification or limitation is placed on a designating petition for public office.
Borkowski validly filed objections to the designating petition, notwithstanding his position as chair of the Putnam County Democratic Party, because the designating petition concerned a public office and not a party position. Accordingly, Borkowski had standing to file objections to the designating petition.
Having determined that the proceeding was timely commenced and served and that Borkowski has the capacity to object to the designating petition, the court turns its attention to the remaining issues regarding the Board’s determination as to the objections.
Review of Specific Objections
The Absence of the Town and County from the Witness Attestations on the Pages of the Designating Petition
A. The Gervasi Pages of the Petition
Petitioner alleges that the Board improperly invalidated 57[22] entire pages of the designating petition witnessed by Thomas and Maureen Gervasi because of defects in the witness statements on those pages. Specifically, petitioner alleges that the Board improperly struck: (a) pages 22, 23, 24, 25, 26, 39, 42, 43, 44, 45, 46, 48, 52, 53, 55, 56, 66, 67, 109, 110, 111, 112, 134, 135 and 136 witnessed by Maureen Gervasi, and (b) pages 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 40, 41, 47, 49, 51, 54, 57, 58, 59, 60, 61, 62, 63, 64, 65, 113, 114, 119 and 137 witnessed by Thomas Gervasi, “because the witnesses do not reside within the ‘political’ subdivision of Putnam County” and, therefore, are ineligible to vote in Putnam County. (Petition ¶ 33.) Petitioner alleges that these individuals live in Holmes, NY, a portion of which votes in Putnam County and a portion of which, including where Mr. and Ms. Gervasi live, votes in Dutchess County. (Id. )
Petitioner claims that “the law on this issue however is clear as to whom or who may carry a Petition no matter where they *522 reside in the State of New York. Ergo, they not only should be restored but revalidated (meaning Petitioner’s sheets) by this Court.”[23] {Id. ¶ 34.)
A review of the Board’s notes, exhibit F, reveals that these pages were struck because the Board sustained Borkowski’s objection that “[i]n the Statement of Witness, the residence address of the purported witness does not provide the correct Town or City, nor does it provide any County information.”[24] The pages were not disallowed on the basis of Mr. and Ms. Gervasi not residing in Putnam County.
Borkowski opposes the restoration of the 56 pages because, he contends, “the BeStefano petition pages witnessed by Thomas Gervasi, Maureen Gervasi and Joseph Gervasi[25] (collectively the ‘Gervasi Signatures’, or the ‘Gervasi Witnesses’) are invalid because they do not sufficiently identify the Town/ City or County of the subscribing witness, as required by law.” (Borkowski aff dated Aug. 8, 2017, ¶ 15.) Borkowski asserts that the Gervasi witnesses failed to provide the town/city in the space provided on the form petition pages in the “Witness Statement” portion. He contends that the Gervasi witnesses have indicated that they reside in “Holmes, NY” and states that Holmes, NY is neither a town nor a city, it is a “zip code which encompasses several towns” and “straddles both Putnam County and Dutchess County.” {Id. ¶ 24.)
Borkowski contends that case law mandates that the provisions of the Election Law be adhered to strictly. “Strict compliance with the Town and City requirements of EL Section 6-140 serves the legitimate purpose of facilitating the discovery of fraud and allows the rapid and efficient verification of signatures within the restrictive time periods imposed by the Election Law.” (Borkowski aff ¶ 19, citing Matter of Zobel v New York State Bd. of Elections, 254 AD2d 520 [3d Dept 1998] [cita *523 tions omitted].) Borkowski continues that strict application of the requirements is even more important here because petitioner previously admitted that he had forged 60 signatures on a nominating petition. (Id. f 21.) Borkowski argues that the absence of this information is fatal to those pages.
Borkowski anticipated, in his affidavit, that petitioner would argue in reply that it has been held that the failure to include the town and county are not fatal to a petition page where the necessary information was set forth elsewhere in the petition. (Id. ¶ 29, citing Matter of VanSavage v Jones, 120 AD3d 887 [3d Dept 2014].) He submits, however, that unlike the facts in VanSavage, “nowhere on any Gervasi petition page is the requisite information provided,” because they have not identified any town or county. (Id. ¶ 30.)
Petitioner responds that the fact that subscribing witnesses failed to include the names of the towns and county in which they reside does not warrant the disqualification of those pages from the designating petition. He asserts in his attorney affirmation in reply and memorandum of law in support of reply submission that case law has held that the omission of the town and county is immaterial if the address of the witness can be ascertained elsewhere on the petition. In this regard, petitioner cites to Matter of Barrett v Brodsky (196 AD2d 603 [2d Dept 1993]) for the proposition that prior to the Election Reform Act of 1992, an omission of a town or county was fatal but after the effective date of the act (Jan. 1, 1993), the requirement has been eliminated so long as the subscribing witness furnishes his/her complete address and, if different, postal address.
Petitioner also asserts that the fact that Mr. and Ms. Gervasi reside in Dutchess County is irrelevant because the Court of Appeals held that the subscribing witness need not reside in the same political subdivision where the election is being held. (Matter of La Brake v Dukes, 96 NY2d 913 [2001].)
The court holds that the fact that Mr. and Ms. Gervasi reside outside of Putnam County is irrelevant and not a basis for invalidating the pages witnessed by them. (La Brake.) As the Appellate Division, Third Department clearly stated in the decision which was upheld by the Court of Appeals:
“[w]e agree with Supreme Court’s adoption of the reasoning advanced by respondents and employed in Lerman v Board of Elections [232 F3d 135 (2d Cir 2000), cert denied 533 US 915 (2001)], and hold *524 that the witness residency requirement in Election Law § 6-132 (2) is unconstitutional on its face. Accordingly, inasmuch as the witness residency requirement contained in Election Law § 6-132 (2) ‘imposes a severe burden on political speech and association, the requirement must therefore be narrowly tailored to advance a compelling state interest in order to pass constitutional muster.’ (Lerman v Board of Elections, supra, at 149). We, therefore, find that Supreme Court’s dismissal of the petition was proper.”[26] (Matter of La Brake v Dukes, 286 AD2d 554, 555 [3d Dept 2001], affd 96 NY2d 913 [2001].)
In addition, the court holds that the failure of Mr. and Ms. Gervasi to insert the town/city and county in which they reside in the subscribing witness statement on the pages witnessed by them should not have served as a basis to disqualify the pages. It is clear that the purpose of including the town and county is to allow proper identification and location of the subscribing witnesses in order that they may be readily located in the event of a judicial contest. As such, it has been held that where the necessary information can be ascertained elsewhere on the page, the page cannot be invalidated for failing to include that information. (Matter of Berkowitz v Harrington, 307 AD2d 1002 [2d Dept 2003]; see also Matter of Barrett v Brodsky, 196 AD2d 603 [2d Dept 1993]; Matter of Tally v Ketover, 10 AD3d 436 [2d Dept 2004].) Clearly, the inclusion by Mr. and Ms. Gervasi of their complete address mere lines above where the city and county should have been inserted provided adequate information to allow them to be subpoenaed if necessary.
In Berkowitz, the Appellate Division stated:
“The issue on this appeal is whether the Election Law requires the disqualification of signatures on a designating petition when the subscribing witness fails to include the name of the town or city, and the county, in which he or she resides, under the ‘Witness Identification Information’ section. We conclude that the failure of the subscribing witness to include the town or city, and the county, in the *525 ‘Witness Identification Information’ section of the petition is insufficient, in and of itself, to warrant invalidation of the petition, particularly where, as here, the complete address of the subscribing witness appears elsewhere on the same page of the petition (see Matter of Barrett v Brodsky, 196 AD2d 603 [1993]).” (Berkowitz v Harrington at 1003.)
Consequently, the 56 pages of the petition which were disallowed because the subscribing witnesses, Thomas Gervasi and Maureen Gervasi, did not reside in the political subdivision where the public office was the subject of the forthcoming election and because they failed to fill in the town or county on the witness identification information section of the designating petition should be counted, subject to the court’s review of the individual signatures contained therein, as addressed below. The pages witnessed by Maureen Gervasi include 217 signatures and the pages witnessed by Thomas Gervasi total 248 signatures. This totals 465 signatures.
B. The Liebler, Perez, and Carinha Pages of the Petition
Petitioner contends that the Board also improperly disqualified the pages of the designating petition which were signed by Anne Marie Liebler, Carlos Perez and Michael Carinha.
The Board disallowed all or some of: (1) 10 pages submitted by Liebler (68, 69, 70, 71, 72, 73, 74, 75, 76, and 138) (the Liebler pages); (2) four pages submitted by Perez (130, 131, 132, and 133) (the Perez pages); and (3) 12 pages submitted by Carinha (12, 13, 94, 96, 101, 102, 103, 104, 105, 106, 128 and 129) (the Carinha pages).[27] The Liebler pages contain 98 signatures. The Perez pages contain 32 signatures. The Carinha pages contain 118 signatures.
1. The Liebler Pages
Borkowski objected to the Liebler pages by raising the same objection to each sheet that “[t]he purported witness does not reside in the Town of Carmel as stated. No correct City[28] or County information provided. Incorrect address. Entire page invalid.” (Petition exhibit D, specific objections at 17-10, 30.) The Board upheld these objections. This was error.
*526 It is difficult to ascertain the exact basis upon which the Board disallowed the Liebler pages because the objection is multifaceted. Nevertheless none of the objections were valid. First, although Borkowski alleges that Liebler does not reside in the Town of Carmel, Liebler has submitted an affidavit attesting: “My residence and mailing address is 235 Ninham Road, Carmel, NY 10512.” (Aff of Liebler dated July 30, 2017.) No evidence has been submitted from which the court could conclude that Ninham Road is in a different town, nor would it matter because a witness need not reside in the same political subdivision where the election is being held and the designating petition is for a countywide position.[29] (La Brake.) Thus, the pages should not have been disallowed on that basis.
Next, as discussed above, the absence of the city or county in a witness identification information has been held not to be a fatal error where, as here, the witnesses’ information can be determined elsewhere. Thus, these pages should not have been disallowed on that basis because Ms. Liebler provided her complete address on the pages. Accordingly, subject to the evaluation of the individual signatures in the section below, the Liebler pages should be counted.
2. The Perez Pages
Borkowski objected to each of the Perez pages for the same reasons he objected to the Liebler pages. The Board upheld the objections as to the Perez pages. This was error.
Perez has submitted an affidavit attesting that “My residence and mailing address is 18 Rochelle Road, Carmel, NY 10512.” (Aff of Perez dated July 30, 2017.) No contrary evidence has been submitted. Thus, the pages should not have been disallowed on that basis for the same reasons set forth above for the Liebler pages.
Again, as discussed above, the absence of the city or county in a witness identification information has been held not to be a fatal error where, as here, the witnesses’ information can be determined elsewhere. Thus, the Perez pages should not have been disallowed on that basis because Perez provided his complete address on the pages. Accordingly, subject to the evaluation of the individual signatures below, the Perez pages should be counted.
*527 3. The Carinha Pages
Borkowski’s objections to the Carinha pages is stated as to each page: “Statement of Witness, Witness Identification Information not completed. Entire page invalid.” (Petition exhibit D, Borkowski specific objections at 2, 22-28.) The Board upheld the objections. This was error.
Like Liebler and Perez, Carinha has submitted an affidavit attesting to his address. “My residence and mailing address is 25 Sylvia Way, Brewster, NY 10509.” (Aff of Michael Carinha dated July 30, 2017.) No evidence to the contrary has been submitted. The court is aware that Brewster is a village within the Town of Southeast. However, the court finds this error to be of no consequence since, clearly, Carinha could have been located if necessary for judicial proceedings.
The other bases for the objection being upheld by the Board have been discussed above. Hence, the Board should not have disallowed the Carinha pages which it did. Thus, the signatures on the Carinha pages should have been counted, subject to the evaluation of the individual signatures below.
C. Disqualification of Individual Signatures by the Board
Having nullified the Board’s rejection of the Gervasi, Liebler, Perez and Carinha pages, all of the signatures on those pages were restored, subject to evaluation of Borkowski’s objections to the individual signatures contained in the designating petition. In addition to contesting the entire pages witnessed by the Gervasi witnesses, Liebler, Perez and Carinha, the Board sustained Borkowski’s objections to 85 individual signatures on those pages. The court has reviewed the 85 objections regarding those pages and upholds 84 of those objections. The court reverses the Board’s determination as to the signature which appears at line seven on page 24 of the designating petition, which was witnessed by Maureen Gervasi. Borkowski objected to that signature on the ground that the signer was not a registered Republican. The court reviewed the list of registered Republicans provided by the Board and located the signer’s name on that list. Therefore, the objection is invalid. The other 84 determinations to invalidate signatures on the designating petition by the Board are upheld.
The Board also upheld 110 of Borkowski’s objections to the individual signatures on pages submitted by other subscribing witnesses. The court has reviewed the Board’s determination of Borkowski’s objections to these signatures and found the Board’s findings to be correct in all cases.
*528 Consequently, of the 1,302 signatures submitted, only 194 were properly invalidated by the Board. Thus DeStefano has submitted 1,108 valid signatures. This exceeds the required 1,000 signatures. Consequently, he should appear on the ballot for the September 12, 2017 primary.
Conclusion
The court holds that the petition filed by DeStefano was timely filed and served.
The invalidation by the Board of the entire pages of the designating petition submitted by Thomas Gervasi and Maureen Gervasi is reversed and set aside.
The invalidation by the Board of the pages or portions of pages of the designating petition submitted by Liebler, Perez and Carinha is reversed and set aside.
Consequently, it is hereby ordered:
1. the determination of the Board of Elections invalidating the designating petition of Andrew DeStefano as Republican candidate in the primary election to be held on September 12, 2017 is vacated and annulled;
2. the designating petition filed by petitioner Andrew DeSte-fano is hereby declared to be valid, proper, sufficient and legally effective to designate him as a candidate for the public office of Putnam County Sheriff in the primary election to be held on September 12, 2017;
3. the Board is directed to print and/or place the name of Andrew DeStefano as candidate for the public office of Putnam County Sheriff on the official ballots to be used at the primary election to be held on September 12, 2017;
4. the Board is enjoined and restrained from printing, issuing, or distributing for use during the primary election to be held on September 12, 2017, any and all official ballots used in the said primary election upon which Andrew DeStefano does not appear as candidate for the public office of Putnam County Sheriff.
All other arguments made have been considered and found to be without merit or not worthy of comment. The Board’s counsel is directed to retrieve from chambers the original records which were delivered to the court for use in this proceeding, to maintain them in the usual course of business and to make them available to any interested party or the Supreme Court of the State of New York, Appellate Division, Second Judicial Department upon request.

. To avoid confusion, the court will refer to the instant petition under Election Law § 16-102, as “the petition.” The designating petition filed by DeStefano with the Board of Elections will be referred to as the “designating petition.”

. As submitted by petitioner’s counsel, the order to show cause provided for various methods of substituted service under CPLR 308, predicated on the belief of petitioner’s counsel, John M. Zarcone, Jr., Esq., that Borkowski might evade service. The court initiated a conference call involving Mr. Zar-cone and Mr. Borkowski, during which Mr. Borkowski agreed to accept service by overnight delivery to his office, with a courtesy copy to be faxed or emailed as well. The court also telephoned the Putnam County Law Department to confirm that it would also accept service by overnight delivery.

. As noted below, petitioner asserts that the parties’ acknowledgment of receipt of the order to show cause as directed by the court constituted a waiver of any defenses based upon untimely service. However, the court’s inquiry concerning service had to do with whether each had received the papers as directed. No substantive issues were discussed and no disposition of the issue was intended.

. Page 3 of the order to show cause.

. Election Law § 6-158 (1) requires that a “designating petition shall be filed not earlier than the tenth Monday before, and not later than the ninth Thursday preceding the primary election.” Since September 12, 2017 has been set as the day on which primary elections will be held this year, the last day to file was July 13, 2017. (See exhibit 1 to Board’s answer, New York State 2017 Political Calendar.)

. Borkowski’s answer alleges that he “served” (past tense) as the chairman of the Putnam County Democratic Committee. (Borkowski answer ¶ 2.) In his affidavit, Borkowski attests that he “is [present tense] the Chairman of the Putnam County Democratic Committee.” (Borkowski aff ¶ 5.) The court assumes that Borkowski was, at all times relevant herein, and is, the chairman of the Putnam County Democratic Committee.

. While the court understands the necessity for counsel to object as broadly as possible so as not to waive any potential meritorious claims, the court is puzzled by the suggestion that the affirmative defenses are “hearsay.” The affirmative defenses cannot be hearsay. They are simply defenses. Only out of court statements made by individuals which are offered for their truth are hearsay. Hence, hearsay is an evidentiary objection, not a pleadings objection.

. Curiously, as to Borkowski, petitioner states that Borkowski’s failure to initiate a judicial proceeding renders any discussion of his standing to commence a proceeding despite his position as Putnam Democratic Party chair, moot. If this is so, petitioner appears to have waived his objections to Borkowski’s standing. Since petitioner appears to persist in objecting to Borkowski’s standing, the court construes this sentence as a misstatement.

. Referring to Matter of Liepshutz v Palmateer (112 AD2d 1098 [3d Dept 1985], affd 65 NY2d 963 [1985]).

. The court notes that the order to show cause was filed on July 31, 2017 (the last day to file) at 4:32 p.m., as evidenced by the County Clerk’s *510 time stamp on the request for judicial intervention form. It does not appear that anyone attempted to walk the papers through in an effort to speed their review by the court.

. Because petitioner raised new matter in his reply, the court will consider the surreply of the Board and Borkowski.

. Borkowski titles the document submitted as “reply affirmation.” It is, in fact, a “surreply.” In addition, Borkowski should have submitted an affidavit, not an affirmation. Although he is an attorney, in this matter, he is a party; hence an affidavit was required. Nevertheless, since it responds to new matter, the court has considered it.

. On August 7, 2017, at the initial appearance on the instant order to show cause, the court held an off-the-record discussion in its robing room in an effort to identify and limit the issues to be addressed in this proceeding.

. When the court inquired of the Deputy Chief Clerk, who also serves as this Justice’s Part Clerk, whether she recognized the writing on the RJI form, she advised the undersigned that she wrote the date and Judge Reitz’s initials on the RJI.

. In 1944, Election Law § 335, when King was decided, provided:
“A special proceeding under the foregoing provisions of this article shall be heard upon a verified petition and such oral or written proof as may be offered, and upon such notice to such officers, persons or committees as the court, justice or judge shall direct, and shall be summarily determined. The proceeding shall have preference over all other causes in all courts.”
Consequently, failure to comply with the court’s directives meant that the proceeding was not properly commenced.

. Election Law § 16-102 was last amended on May 8, 1992, just prior to the amendment of CPLR 304 on June 23, 1992, which had an effective date of July 1, 1992.

. CPLR 2102 sets out various requirements regarding papers being filed, including the size of the papers, the language (English) to be used, etc.

. CPLR 403 (b) provides as follows:
“Time for service of notice of petition and answer. A notice of petition, together with the petition and affidavits specified in the notice, shall be served on any adverse party at least eight days before the time at which the petition is noticed to be heard. An answer and supporting affidavits, if any, shall be served at least two days before such time. A reply, together with supporting affidavits, if any, shall be served at or before such time. An answer shall be served at least seven days before such time if a notice of petition served at least twelve days before such time so demands; whereupon any reply shall be served at least one day before such time.”

. Had petitioner proceeded by notice of petition under CPLR 403 (b), he would not have received a disposition by the court in enough time to get on the ballot (if he prevailed), because of the time limits imposed under CPLR 403 (b); therefore, he proceeded by order to show cause and was required to comply with the court’s service provisions.

. This court recognizes that the application of the time provisions set forth in CPLR 403 (b) may complicate Election Law proceedings, particularly those which may affect the printing and distribution of ballots in primary and general elections. This, however, is an issue that the legislature must correct.

. Petitioner appears to claim that the clock did not begin to run on his time to file the proceeding because he denies timely receipt of a copy of the Board’s determination. The court finds that petitioner had actual knowledge of the Board’s determination, and, based on the materials submitted with the Board’s surreply finds that the Board timely and properly mailed him a copy of the determination as required. Since the court has found the petition to be timely, no further discussion of this issue is warranted. Moreover, petitioner did not raise lack of receipt of the determination in the petition; therefore, he cannot raise it here.

. The court counts the number of pages invalidated as 56, not 57. The total number of pages submitted by Thomas and Maureen Gervasi is 56. Petitioner appears to include the page submitted by Joseph Gervasi, but petitioner has not challenged the Board’s disallowance of that page. Consequently, the number of Gervasi pages to be considered by the court is 56.

. The court does not appreciate having to guess at the basis for the claim that these 56 pages should be restored, nor the absence of any authority that compels such a result. A vague statement that “the law is clear” without more, is decidedly unhelpful. No authority was cited by petitioner.

. In some cases, multiple objections to pages of the petition were raised by Borkowski. The Board did not specify which objection served as the basis for the invalidation of those pages.

. The court notes that petitioner did not seek any relief as to any signature page of the designating petition witnessed by Joseph Gervasi. Borkowski alone has mentioned Joseph Gervasi as having witnessed page 50 of the designating petition submitted. Hence, the three signatures contained on that page remain disqualified.

. This holding is consistent with the amendment to Election Law § 6-132, effective November 22, 2017, which eliminated the requirement for the witness to be a resident of the political subdivision in which the office being filled is located. (See L 2017, ch 106, § 1.)

. Petitioner asserts at paragraph. 38 that all of the Carinha pages were disallowed. This is incorrect. Some of the Carinha pages were disallowed, not all. This error caused excessive work for the court and its staff who were endeavoring to ensure that all signatures were properly accounted for. The court does not appreciate petitioner’s sloppiness.

. The court notes that there are no cities located within Putnam County. The County is comprised of towns, villages and hamlets.

. It may be that this address has a Carmel mailing address and is situated in a different town, but the court has not been provided with evidence to demonstrate that possibility.